28 C.C.P.A. (Patents)

In re GREIDER et al.

Patent Appeal No. 4431.

Court of Customs and Patent Appeals.
April 14, 1941.

George W. Mills, Jr., of Lockland, Ohio (Albert F. Robinson, of Lockland, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (4, 6, 10, 13, 15, and 20 to 23, inclusive) in appellants' application for a patent for an alleged invention relating to improvements in "Non-Blooming Cementitious Products and Method of Making Same."

Claims 4, 6, 10, 13, and 15 are method claims, and claims 20 to 23, inclusive, are article claims. Claims 4 and 15 are illustrative of the method claims, and claim 20 is illustrative of the article claims. They read:

"4. A method for fabricating indurated hydraulic cementitious products to prevent blooming consisting of forming a mass of hydraulic cementitious material into sheets, permitting the sheets to attain final set and the mass to form hydrated lime and thereafter treating them with an aqueous solution containing a water-soluble substance that reacts with said hydrated lime to prevent blooming."

"15. A method for treating preformed hydraulic cementitious products to prevent blooming consisting of forming hydraulic cementitious material from Portland cement and asbestos fiber, with only minor proportions of other materials, into the desired product, treating said product after it has attained final set with an aqueous solution substantially of the character of ammonium carbonate, and substantially drying the surfaces of said product."

"20. An article prepared in accordance with the method of claim 4."

The references are:

White, 1,824,854, September 29, 1931.

Triggs (Br.), 371,522, April 28, 1932.

It appears from appellants' application that unless hydraulic cementitious products, such as cement asbestos roofing shingles, are treated with "gases containing carbon dioxide," which is an expensive and otherwise unsatisfactory process, or with a chemical solution which will react with hydrated lime, which exists in substantial quantities in "hydrated cement," to form an insoluble compound, such products become discolored owing to the fact that a portion of the hydrated lime is "dissolved and caused to be diffused slowly to the surface" as a result of exposure to moisture. This discoloration is referred to in appellants' application as "bloom," "bleeding," "efflorescence," or "laitance," and the purpose of appellants' process, as defined in the appealed claims, is to prevent such discoloration. It is stated in appellants' application that in "some of these previous attempts to prevent discoloration *the treatment* [with an aqueous solution, such as used by appellants and disclosed in the patent to White] *has been applied before setting of the cement, thereby not only impairing setting of the cement composition to a properly hard, dense character, but rendering such treatment ineffective because of unsuitable conditions prevailing at the time it is applied*" (italics ours); that appellants' process, which is accurately defined in the appealed claims, consists in treating hydraulic cementitious products after they have attained "final set" with an aqueous solution containing a water-soluble substance, such as ammonium carbonate (set forth in appealed claim 15, the only claim in which any particular chemical solution is specified), which reacts with hydrated lime to form an insoluble compound thereby preventing "bloom"; and that by appellants' process the expensive

and unsatisfactory method of treating such products with "gases containing carbon dioxide" and the difficulties hereinbefore set forth attending the treating of such products with an aqueous solution containing a water-soluble substance, such as ammonium carbonate, before the cementitious products have attained "final set" are eliminated.

The patent to White relates to a method of treating building materials, composed wholly or partly of cement, for the purpose of preventing "bloom" or "laitance." In the patentee's process, the cementitious articles are treated with ammonium carbonate, ammonium bicarbonate, and other named substances which, it is stated, react with the lime to form a substantially insoluble compound. The patentee states in his application that the ammonium carbonate may be mixed with the cement, and that:

"Precaution should be taken to provide that the ammonium carbonate is equally distributed so far as practical conditions will allow throughout the whole of the concrete mass and that local excesses of ammonium carbonate are not allowed to exist more than momentarily. In practice this condition can be satisfied by thoroughly incorporating the bulk of the gauging water with the cement, leaving the addition of ammonium carbonate in the form of a saturated solution to the end, mixing it in rapidly and efficiently.

"In the case of cement and ammonium carbonate mixtures containing high proportions of ammonium carbonate, *the first set normally occurs within a few minutes* and if this first set be disturbed or the mixture is not applied sufficiently quickly it may fail to set. If undisturbed the mass sets and becomes hard during the course of a few days." (Italics ours.)

In example 3 of his patent, the patentee states: "Concrete which has been recently made, and *preferably in the condition of its first set,* is treated with a saturated solution of *ammonium carbonate* applied by any suitable means and *worked in rapidly with a brush."* (Italics ours.)

The patent to Triggs discloses a process of "cold glazing cement asbestos plates." The patentee states that cement paste, "which is smooth and polished in turn by means of hot irons or rollers," is applied to freshly made cement asbestos plates in successive layers for the purpose of providing a harder surface which will better withstand atmospheric conditions, and that "After the coating has hardened, the plate is immersed in an atmosphere of carbon dioxide, whereby its hardness is much increased and efflorescence [bloom] is wholly obviated. If the facing is to be highly acid-resisting, * * * the surface of the cement coating may be treated with a solution of fluosilicate."

Claims 1, 2, and 3 of the Triggs reference were referred to in the decision of the Primary Examiner as being pertinent to the issues here presented. They read:

"1. A process for cold glazing cement-asbestos plates consisting in *applying on the freshly made, and still damp plates,* successive layers of cement paste each of which is smoothed and polished in turn, by means of hot irons or rollers. (Italics ours.)

"2. A process as claimed in Claim 1, in which the plates *are treated with carbon dioxide after having been polished and having hardened.* (Italics ours.)

"3. A process as claimed in Claims 1 or 2, in which the plates are treated with a solution of alkaline fluosilicate."

The appealed claims were rejected by the Primary Examiner on the patent to Triggs in view of the patent to White, the examiner stating:

"Triggs states that his surface treatment *'preferably'* follows the gas treatment * *, which is to say that it *not necessarily* follows the gas treatment. In his claim 1 he describes the making of his asbestos plates, the final set clearly taking place.

"In his claim 3 he recites a surface treatment of alkaline fluo-silicate which may follow the process recited in claim 1 or the process recited in claim 2, claim 2 reciting the gas treatment. Under this unambiguous language the plates made and fully set (claim 1) could be immediately surface treated with an alkaline fluosilicate according to claim 3, omitting the gas treatment recited in claim 2. To substitute ammonium carbonate [disclosed in the patent to White] for the alkaline fluosilicate would not amount to invention in view of White."

The examiner further rejected the appealed claims on the patent to White in view of the patent to Triggs, stating that: "While White states that his surface treatment is done when the concrete is *'preferably'* in the condition of its first set [example 3, hereinbefore quoted], it is merely a matter of preference and it is reiterated

that it is not seen that it would amount to invention to delay the surface treatment until the concrete is finally set in light of the teaching of Triggs who clearly discloses the surface treatment of a similar product after the final set has taken place."

In affirming the decision of the Primary Examiner, the Board of Appeals in its original decision, among other things, said: "The action of ammonium carbonate upon hydraulic lime is old and well known as disclosed by the patent to White and in this patent the treatment is also for the purpose of preventing laitance. In the patented process the ammonium salt may be mixed with the cement as it is being prepared. Appellants contend that the patent indicates that great care must be used in the preparation, for otherwise it will interfere with the setting of the cement and thus produce an inferior article. However, it is noted that in example 3, the ammonium carbonate *is not applied until after the condition of first set has been obtained*. It is well known that cement does not set immediately after it has once been prepared, but the first set is quite rapid and covers the major portion of the setting process. The final set is quite slow and may extend over months. In view of this example 3 it is apparent that the patentee realized the benefits to be obtained by applying the ammonium carbonate *after the major portion of the setting had taken place*." (Italics ours.)

The board apparently did not deem it necessary to rely upon the patent to Triggs, although there is nothing in its decision to indicate that it did not consider the disclosure in that patent as pertinent art. The board concluded its decision with the following statement: "We are of opinion that the appealed claims are substantially anticipated by the disclosure in the patent to White. This latter patent shows that the problem of preventing bloom or laitance in cement articles was fully understood and that the patentee attempted to prevent the same with exactly the same material as set forth in the appealed claims. The only feature not found in this patent is the time at which the solution of ammonium carbonate is to be applied. There appears to be no patentable difference between the example 3 of the patent and that claimed."

In their request to the Board of Appeals for a reconsideration of its decision, counsel for appellants stated, among other things, that the patentee White did not suggest that the ammonium carbonate might be applied to cementitious material *"after* the condition of first set has been obtained," but that, on the contrary, his disclosure required that the ammonium carbonate be applied to the material "in the condition of its first set" as set forth in the patentee's example 3, hereinbefore quoted. Counsel further stated that: "The first or initial set is that process of crystallization or hardening which begins from the moment water is added to cement until the paste ceases to be fluid and plastic but is not so hard that it can not be indented in a needle test. When the degree of hardness is reached such that the cement can not be indented in a needle test, it has reached a final or hard set." In support of that statement, counsel cited "Page 61 of 'A Hand-Book for Cement Users' by Charles C. Brown, published by Municipal Engineering Co. of New York in 1905. (3 Ed.)"

In its decision on the request for reconsideration, the Board of Appeals adhered to the views expressed in its original decision and again held that there was no patentable distinction between the disclosure in example 3 of the patent to White and the method defined in the appealed claims.

Much of the brief of counsel for appellants is devoted to a discussion of the disclosure in the White patent, it being contended by counsel that the patentee neither discloses nor suggests the application of ammonium carbonate to cementitious products *"after* the condition of first set has been obtained"; that the statements contained in the patentee's example 3, when considered in connection with the other portions of his application, should be construed to mean that the ammonium carbonate is applied to cementitious products before, not after, they have reached the condition of "first set"; that in appellants' process, as defined by the appealed claims, the ammonium carbonate is not applied to cementitious products until after they have attained final set, which, according to appellants' specification, occurs in "about six (6) hours at normal temperature"; and that, therefore, the disclosure in the patent to White is not an anticipation of the invention defined in the appealed claims.

It is also stated in appellants' application that, although cementitious products attain final set at normal temperature in about six hours, it is preferable that such products be permitted to stand for a period of

about twenty-four hours before the ammonium carbonate is applied, and that cement asbestos roofing shingles, one of the products to which appellants' process is particularly adapted, may attain final set in from about eight to forty-eight hours. It is apparent, therefore, that, according to appellants' application, the cementitious products are permitted to stand for from six to forty-eight hours before the ammonium carbonate is applied.

Counsel for appellants argue that when ammonium carbonate is mixed with cement materials, or is *applied to* articles made from cement before the cement has attained final set, the "setting" thereof may be interfered with, and that the patentee White recognized that fact.

It is also argued by counsel for appellants that, "except [that] there is the reverse situation," the issues here involved are "almost identical with those" involved in the case of Barber Asphalt Corp. v. La Fera Grecco Contracting Co., D.C., 30 F. Supp. 497, wherein it was held by the District Court, on the authority of the decision of the Circuit Court of Appeals for the Third Circuit in the case of Barber Asphalt Co. v. Stulz-Sickles Co., 3 Cir., 89 F. 2d 960, 962, that the method of preventing the evaporation of water from the surface of freshly laid concrete by spraying a *bituminous emulsion upon such surface before the concrete had set* as defined in the claims of patent No. 1,684,671, issued September 18, 1928, to Harold P. Hayden, involved invention. In comparing the issues in that case with those in the instant case, counsel state that: "Here appellant's treating material is applied *after* the concrete is finally set whereas the references apply it *before* or *in the condition of the first set.* There Hayden coated the concrete *before* set, and the references coated it *afterwards.* The reference here fails as an anticipation to the same extent that the references failed [in the Barber Asphalt Corp. v. La Fera Grecco Contracting Co. case, supra,] to anticipate the Hayden process."

Any force that that argument might have had has been dissipated by the decision of the Circuit Court of Appeals for the Third Circuit overruling its former decision in the case of Barber Asphalt Co. v. Stulz-Sickles Co., supra, reversing the judgment of the District Court in the case of Barber Asphalt Corp. v. La Fera Grecco Contracting Co., supra, and holding that the method defined in the claims of the Hayden patent, No. 1,684,671, did not involve invention in view of the prior art and that the patent was invalid. See Barber Asphalt Corp. v. La Fera Grecco Contracting Co., 3 Cir., 116 F.2d 211.

It will be observed that in its original decision in the instant case the Board of Appeals stated that the process defined in the appealed claims was "substantially anticipated by the disclosure in the patent to White," and that there was no "patentable difference between" the White disclosure and the process defined in the appealed claims. The board adhered to those views in its decision on appellants' request for reconsideration. It did not hold that every element in the appealed claims was disclosed in the patent to White.

Obviously, the White patent does not expressly disclose the idea of applying ammonium carbonate or its equivalent to cementitious products *after such products have attained final set.* The patentee does explain, however, the difficulties attending the mixing of a solution of ammonium carbonate with cementitious materials or applying such a solution to such materials "in the condition of the first set," and the desirability of avoiding disturbance of the mass during its first set, it being stated in the patent that if the cementitious mass is disturbed during the period of its first set "it may fail to set" properly.

It is stated in the brief of counsel for appellants that: "The elimination of the lime by solution tends to make the concrete porous and impair its strength. This is recognized by White and the above publication ['A Hand-Book for Cement Users']."

Just what is meant by the statement "The elimination of the lime by solution," *as applied to the issues in the instant case,* we are unable to understand. We find nothing either in the patent to White or in the publication hereinbefore referred to ("A Hand-Book for Cement Users" which was published in 1905, twenty-six years before the White patent issued and thirty-one years before appellants' application was filed) which teaches anything about the elimination of lime in cement by the mixing therewith, or the application thereto, of ammonium carbonate. However, the publication does emphasize the fact that lime should be thoroughly hydrated.

With reference to "efflorescence," on page 204 of the publication, it is stated: "If there is *too little water* in the con-

crete when it is deposited, complete combination does not occur in the cement, the concrete is likely to be somewhat porous and subsequent moisture from any source has an opportunity to bring the soluble substances mentioned to the surface. When *too much water* is used it may separate the lime from the other ingredients in the cement to some extent and when it evaporates it leaves the concrete somewhat porous and brings soluble matters to the surface." (Italics ours.)

Obviously, the patent to White must be considered in the light of the teaching in that publication.

It is further stated in the brief of counsel that: "Appellants have pointed out, and it is clearly apparent from their description of the invention, that *by delaying the treatment until after final set there is no elimination of the lime being formed in the first and final setting of the cement,* and therefore no impairment of the first and final set." (Italics ours.)

We find no teaching in appellants' application that "by delaying the treatment until after final set there is no elimination of the lime being formed in the first and final setting of the cement, and therefore no impairment of the first and final set."

It is also stated in the brief of counsel that appellants "want the hydrated lime to be formed when their treatment is applied, and *it is formed after the final set.*" (Italics ours.)

Apparently the thought intended to be conveyed to this court by that statement is that, in the process of hydration, hydrated lime is not formed in the cementitious material until "after the final set," and that if an aqueous solution of ammonium carbonate is mixed with such cementitious material, or is applied thereto "in the condition of its first set," the hydrated lime is prevented from being formed. No such teaching is contained in appellants' application, nor is any authority cited in support of that statement.

So far as the teaching in appellants' application is concerned, all of the difficulties attending the mixing of ammonium carbonate with cementitious materials or the application thereof to such materials in the condition of their first set were either expressly set forth in the patent to White or would be obvious to one skilled in the art with that patent before him. So, the most that appellants did, so far as the record discloses, was to apply a chemical solution, such as an aqueous solution of ammonium carbonate, to cementitious material *after the material had attained final set* (not taught in the patent to White) and ascertain that such solution would react with hydrated lime (as taught by the White patent) to form an insoluble compound and thus prevent "bloom" or discoloration. There is nothing of record to indicate that any unexpected result was obtained by appellants' process.

We are of opinion, therefore, that, in view of the fact that the patentee White teaches that the application of ammonium carbonate to a cementitious product "in the condition of its first set" will react with hydrated lime, which is readily soluble in water, to form an insoluble compound and thus prevent subsequent "bloom" or discoloration, no invention was involved in applying the same kind of solution to the same kind of material *after such material had attained final set* and ascertaining that such solution would react with the hydrated lime in such material to form an insoluble compound and thus prevent "bloom" or discoloration.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.